## KIMBALL *vs.* GROVER.

K held a note signed by G, to secure the payment of which G executed to K a mortgage of certain real estate. Soon after the date of the note, G bargained the land to W, who was, by agreement with G, to give his note to K, together with a mortgage of the same land to secure its payment, and to take up the note of G held by K. The bargain between G and W was made known to K, who consented to make the exchange, and a time was agreed upon for that purpose. At the time so agreed upon, K was unable to attend to making the exchange, but proposed to G to close with W, by giving him a deed subject to the mortgage to K, and to inform W that in a few days he would come forward and make the exchange. G made his deed, accordingly,

to W. Nothing further was done or attempted to be done by either party in execution of the contract.

*Held*, that the duty of a simultaneous performance of the contract by each party was imposed by the contract.

That the execution of the deed by G to W was only a partial, and not a complete performance of the contract on the part of G and W, such as to impose the duty of performance on the part of K.

*Held*, also, that in order to a complete performance of the contract on the part of G and W, so as to entitle G to a surrender of his note and mortgage held by K, it was necessary, not only that G should have executed the deed of the land to W, but also that the note and mortgage of W should either have been delivered or tendered to K.

Assumpsit, upon a promissory note, dated July 21, 1835, for $350, and payable to the plaintiff, or order, in two years, with annual interest.

The action was tried at the court of common pleas, March term, 1839, in this county, upon the general issue, when it appeared in evidence, that the note declared upon was secured by a mortgage of certain real estate—that, soon after the date of the note, the defendant bargained the land to one Wood, who was to give his note to the plaintiff, together with a mortgage of the land to secure the same, and to take up the note now in controversy in this suit.

This arrangement was made known to the plaintiff, and he consented to make the exchange, and a time was fixed for executing the contract.

At that time the plaintiff could not attend to make the exchange, but proposed to the defendant to close with Wood, by giving him a deed of the land, subject to the plaintiff's mortgage, and to inform Wood to omit putting his deed on record, and in a few days he would come forward and make the exchange.

The defendant accordingly made a deed to Wood, and closed the bargain with him in the manner proposed by the plaintiff. It did not appear that any thing further had been done, or attempted to be done, by either party, in execution of the contract with the plaintiff for the exchange of the securities. There were two endorsements upon the note,

of payments made by Wood subsequent to the proceedings before detailed in this case.

Upon this testimony a verdict was taken by consent for the plaintiff, for the amount due upon the note, subject to the opinion of this court upon the foregoing case.

*Perley*, for the defendant. Grover has performed all his part of the contract. He sold the land, at the suggestion of the plaintiff, to Wood. Grover had nothing further to do. He stands discharged. We do not contend that the note has been actually paid. Kimball accepted Wood as his debtor, and discharged Grover. The defendant was induced to part with his land upon an understanding with the plaintiff, that he would see the residue of the bargain completed. If the whole bargain had been completed, the defendant would have been discharged. It became the duty of the plaintiff to see to its completion, and that is equivalent to its completion. Grover had nothing further to do. 1 *Esp. R.* 206 ; 2 *Barnew. & Adolph.* 328 ; 3 *Camp.* 174.

*Bartlett*, for the plaintiff. 1. Here was no payment, no accord and satisfaction, no substitution, and no accord without satisfaction. If the defence set up be a defence in any possible shape, it is not to be received under the general issue.

2. If the defence were pleaded, it could set forth nothing but an unexecuted agreement relative to an interest growing out of land, and void by the statute of frauds. It could not have been enforced by the plaintiff, to compel either Wood or the defendant to give the security.

3. If the agreement were valid, and if the defendant could rely upon it as such, still he must show a tender of the mortgage and note of Wood to the plaintiff, in order to discharge himself from his note and mortgage to the plaintiff.

Kimball *v.* Grover.

WOODS, J. Some of the questions raised at the argument it is not necessary to discuss or settle at this time.

Upon the view which we entertain of the contract disclosed by the case, and relied upon in defence of the action, the question whether the defence set up was receivable under the plea of the general issue, as well as the question whether the contract itself falls within the condemnation of the provisions of the statute of frauds, as being a mere parol agreement concerning an interest growing out of land, and for that reason void, are questions the determination of which we deem wholly unnecessary to the proper decision of this cause.

What is the true interpretation of the provisions of the contract, and what duties were thereby imposed upon the several parties thereto ; and whether the same have been performed according to the spirit and meaning thereof, and the true intention of the parties, on the part of Wood and the defendant, so as to entitle the defendant to a compliance with the contract on the part of the plaintiff, in regard to the contemplated surrender of the note and mortgage of the defendant, are questions important and material to be decided, in order to the proper determination of the just rights of the parties to this controversy.

It appears that the note which is the foundation of this action, was secured to the plaintiff by a mortgage of the defendant's real estate, and that soon after the note and mortgage were given, the defendant agreed to sell the land to one Wood, and Wood agreed with the defendant to give his note to the plaintiff, together with a mortgage of the land, to secure the payment of the note, and to take up the note which is the subject of controversy in this suit. This bargain of Wood and Grover was made known to the plaintiff, and he consented to make the exchange, and a time was fixed upon for carrying the arrangement into effect.

At the time agreed upon, however, for making the exchange, the plaintiff was unable to attend, but proposed to

Kimball *v*. Grover.

the defendant to close with Wood, by giving him a deed subject to the mortgage of the plaintiff, and to inform Wood not to put the deed upon record, and that in a few days he would come forward and make the exchange. The deed was made to Wood, and the proposed bargain between Wood and the defendant was closed, but nothing further was ever done about the arrangement between the plaintiff and Wood and the defendant.

It is contended by the counsel for the defendant, that the legal effect of the arrangement thus made between the plaintiff, Wood, and the defendant, and of the conveyance to Wood, was a substitution and an acceptance of Wood by the plaintiff as his debtor, instead of the defendant, and a complete cancellation and discharge of the note in controversy ; and that by the execution of the deed to Wood the contract was completely performed by the defendant, so far as he was concerned. The court, however, find themselves unable to adopt that view of the case.

The contract was an executory contract for an exchange of securities, for the supposed convenience or other advantage of Wood and Grover ; at least, it does not appear that the plaintiff was to derive any advantage from the exchange. The substitution of the liability of Wood and his mortgage, for that of Grover and his mortgage, was plainly the purpose of the parties. The whole contract looked to an exchange of securities, and to nothing else. That, only, was in the contemplation of the parties. Such was the contract in terms, and we think that such was its spirit and meaning also. The case finds, that when the defendant and Wood made known to the plaintiff the contract entered into between them, the plaintiff 'consented to make the exchange.' It further finds, that, afterwards, the plaintiff being unable to attend at the time first fixed upon for the exchange, the plaintiff told the defendant to inform Wood, that ' in a few days he would come forward and make the exchange.' It was then an exchange of securities that he at first assented to, and it was

an exchange only that he finally engaged to come forward and make.

Now the contract for an exchange plainly contemplates the doing of an act by each party ; the very term exchange implies something passing from each party to the exchange, to the other party ; and in this case, the exchange was to take place at a period subsequent to the time of the bargain. The contract was entire and mutual, and imposed mutual and material duties upon each party.

And we think a simultaneous performance of those duties by each party was plainly contemplated by the contract. It was never the design of the plaintiff, nor the expectation of the defendant, that the plaintiff should relinquish the securities he held against the defendant, until he should have received the note and mortgage of Wood. It was not so agreed in terms, nor can it fairly be inferred from the agreement disclosed, in connection with the attendant circumstances, that such was the understanding of the parties.

The very idea of an exchange without more, precludes the supposition of the existence of any such understanding. The plaintiff, when applied to by the defendant and Wood, consented to exchange the securities which he held, for others which he probably deemed a fair equivalent. He clearly did not consent to surrender his securities, and to rely upon the personal responsibility of either Wood or the defendant for a future performance on their part. It does not appear that the plaintiff was to derive any advantage or benefit from the contemplated exchange, but only that, when called upon, he was willing, and assented to make the exchange, to enable the defendant and Wood to effect an arrangement which they deemed to be either for their convenience or interest to make, and which, without the plaintiff's concurrence, could not have been made. This consideration adds force and strength to the opinion, in the absence of express evidence to the contrary, that a simultaneous exchange of securities was intended, and that, as before stated, it was not in the con-

Kimball *v.* Grover.

templation of either party, that the securities held by the plaintiff were to have been surrendered, without the stipulated equivalent, of the note and mortgage of Wood to the plaintiff, being rendered at the same time.

And we think it would be neither just nor reasonable to give to the contract a construction which would compel the plaintiff to part with his securities, without an equivalent received at the time, in a case where there is no express stipulation to that effect.

The case of *Fairbanks* vs. *Dow*, (6 *N. H. Rep.* 268,) is somewhat analogous to the one under consideration, and in its principles and reasoning goes in confirmation of the view we have taken of it.   Dow agreed in writing to sell to Fairbanks his farm for $250, payable one third yearly from the date of the writing, with interest annually : and it was held that no action could be maintained against Dow for not conveying the land, until security for the payment of the purchase money should first be tendered.

The opinion in that case goes upon the ground of the injustice and unreasonableness of a construction of the contract that would compel a party to part with the title to his land, without payment or security therefor, in the case of a mere contract to sell, in the absence of an express provision to that effect.

And we think, that, if in the case of a bargain to sell for a consideration to be paid at a future period, as in the case of *Fairbanks* vs. *Dow*, the party agreeing to sell is not obliged to part with the title to his property except upon payment or security of the purchase money, it would be difficult to find any sound principle upon which, in the case of a mere contract for an exchange of property, it can be held that either party would be obliged to part with his property, except upon a simultaneous delivery to him by the other party of the property stipulated for in the contract of exchange.

It was said in argument by the defendant's counsel, that the defendant was induced to part with his title to Wood by the

Kimball *v.* Grover.

plaintiff, and that upon so doing the contract was completely fulfilled, so far as the defendant was concerned, and that thereupon he became entitled to a surrender of his note and mortgage.

But we think it was not the design of the plaintiff, in proposing or suggesting to the defendant the execution of the deed to Wood, to alter the character or obligation of the original contract, and that it had no such legal effect. In fact, what he proposed to the defendant to do, and what was done in pursuance of the proposition, was only a part of what was necessary to be done in order to the fulfilment of the contract of the defendant and Wood. Without the deed from the defendant to Wood, no such mortgage of Wood to the plaintiff, as was contemplated by the parties, could have been given ; for Wood would not have owned the land, so that he could have conveyed the same by his mortgage ; and it was most manifestly the purpose of the parties that the defendant should invest Wood with the title to the land, so that his mortgage would pass the same to the plaintiff.

Upon the whole, we are all of opinion, that inasmuch as the note and mortgage of Wood were never delivered or tendered to the plaintiff, that the contract under consideration was not so completely performed on the part of Wood and the defendant, as to entitle the defendant to a surrender of his note and mortgage given to the plaintiff, nor so as to operate as a cancellation and discharge of the note ; that the verdict was well warranted by the facts reported in the case, and that judgment should be rendered thereon.

*Judgment on the verdict.*